IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
SHAHEEDAH D. RUSHDAN,           )
                                )
            Petitioner,         )
                                )
      v.                        )     1:09CV104
                                )
ANNIE HARVEY,                   )
                                )
            Respondent.         )
```

## ORDER, MEMORANDUM OPINION, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 27, 2006 in the Superior Court of Guilford County, Petitioner was found guilty after a jury trial of four counts of obtaining property by false pretenses, five counts of attempting to obtain property by false pretenses, and one count of breaking or entering a motor vehicle in cases 04CRS91876, -92376, -92382, -92386, -92388, -92391-92, -92394, and -92397. She then pled guilty to having the status of a habitual felon in cases 05CRS23093-94, -23096, and -23098. She was sentenced to four terms of 100 to 129 months of imprisonment. Two of those terms were consecutive, while the other two were concurrent, meaning that Petitioner's total sentence was 200 to 258 months of imprisonment.

Petitioner did file a direct appeal, but the North Carolina Court of Appeals found no error in the convictions and sentences. The North Carolina Supreme Court declined discretionary review.

Petitioner then filed a motion for appropriate relief in the trial court. Both that motion and a subsequent petition for certiorari to the North Carolina Court of Appeals were denied. Petitioner next filed her habeas petition in this Court. Respondent has filed a motion for summary judgment seeking to have the petition denied.[1]

**Facts**

The evidence presented by the prosecution at Petitioner's trial was set out by the North Carolina Court of Appeals as follows:

> On 16 August 2004, defendant drove a red van containing her daughter and a friend, Adrienne Williams, ("Williams") to a finance company parking lot. Defendant parked in an adjoining parking space occupied by Vanessa Sykes's ("Sykes") car and said, "I ought to take [that] pocketbook for ... pulling in this close to me." Williams helped defendant's daughter out of the car. Defendant told Williams to "[p]ut [her daughter] back in the car [and to] .... [g]et back in the car." Defendant "put the car in reverse and ... skidded out of the parking lot."
>
> Sykes walked out of the finance company and noticed a red van leaving the lot "real fast." Sykes had left her purse on her car's front seat and discovered it was missing. Sykes's purse contained her checkbook, credit cards, and her North Carolina driver's license. Sykes reported the theft to law enforcement. Defendant stopped the van a few minutes later and went through Sykes's pocketbook.

---

[1] Petitioner has filed a motion to strike the summary judgment motion for being untimely. She claims that Respondent was given 40 days to respond, but did not file the motion until the 43rd day after the response was ordered. Petitioner's motion will be denied. The Court's order that Respondent file an answer within 40 days was entered on February 10, 2009. Forty days from that point was March 22, 2009. March 22, 2009 was a Sunday, which meant that Respondent had until Monday, March 23, 2009 to file an answer. She filed her answer and summary judgment motion on March 23, 2009. The summary judgment motion is timely and Plaintiff's motion to strike will be denied.

-2-

A few days later, Williams watched as defendant taped a color picture of herself over Sykes's driver's license's photograph. Defendant told Williams she wanted to use the license and the checks. Defendant later told Williams the license had "worked" and she had used it as identification to purchase merchandise from Target. Defendant asked Williams to accompany her to the mall, but Williams refused.

Defendant went to the mall with two of her children and Williams's daughter. Defendant returned with several bags of merchandise, including a Belk's bag. Defendant left the Belk's bag with merchandise therein at Williams's home.

On 22 August 2004, defendant attempted to negotiate a check using Sykes's altered license at the Finish Line and Foot Locker at Oak Hollow Mall. On 29 August 2004, defendant attempted, but failed, to negotiate a check using Sykes's altered license as identification at Food Lion. Defendant exited the store and left a check and her wallet inside. The wallet contained Sykes's altered license and defendant's identification. It also contained carbon copies of checks written on 22 August 2004, payable to Belk's, Dillard's, Motherhood Maternity, and Gold & Diamond, and checks dated 25 August 2004 and 29 August 2004, payable to Food Lion, after Sykes's purse was stolen. Food Lion videotaped the 29 August 2004 attempted transaction and defendant was identified as the person who left the wallet inside Food Lion.

On 9 September 2004, defendant was arrested. Defendant provided and signed a statement that she had found Sykes's pocketbook on the ground, not inside her car. She admitted altering Sykes's license and using it and the stolen checks to obtain merchandise from various stores. Williams was also arrested after defendant told law enforcement officers that Williams was involved in the crimes. Williams told police officers about a taped conversation between Williams and defendant. During that conversation, defendant told Williams, "there's no chance that they can convict you of it, because it was my ID, it's my name on the checks, it's my signature. I'm the one who did it."

State v. Rushdan, 183 N.C. App. 281, 644 S.E.2d 568, rev. denied, 361 N.C. 574, 651 S.E.2d 557 (2007).

-3-

Petitioner's only evidence was her own testimony. She testified that she did make a trip to the finance company with Williams, but denied that Sykes or her car were there. She claimed that only another customer's vehicle and two employee vehicles were in the parking lot. She also noticed that her driver's license was missing at that time. (Trial Tr., Vol. IV at 728-34.) Petitioner denied altering Sykes' license and denied writing any checks. Petitioner surmised that Williams had altered Sykes' license, had written checks, and claimed that she did not know how her own wallet was left at Food Lion. (Id. at 740-42, 832-33.) She admitted that she signed the statement with the police, but claimed she had written down what the police had suggested in hopes of receiving favorable treatment and receiving bail. (Id. at 774-86.) Petitioner claimed that the taped conversation with Williams was merely a ruse to convince Williams' mother that Williams was innocent so that her mother would hire an attorney for Williams. (Id. at 794-96.)

### Claims in the Petition

Petitioner raises eight grounds for relief in her petition. Her first claim is that her statement to police was coerced and illegally obtained. She maintains that she only gave her written confession in order to receive a low bond and that she did not waive her rights until after she signed the statement. Petitioner's next claim is that her conviction for obtaining

property by false pretenses in case 04CRS91876 (the Food Lion incident) is invalid because no merchandise was actually obtained. She also contends that her convictions in cases 04CRS92376, -92382, -92386, -92388, -92392, and -92397 are invalid due to a lack of evidence.

Petitioner's fourth claim asserts that her arrest was illegal because she was arrested at the home of friend. She states that the officers had only an arrest warrant, but not a search warrant. Fifth, Petitioner states that "[t]he jury was charged incorrectly." The supporting facts for that claim allege that her co-defendant testified that she had not made any deal with the State in exchange for her testimony. The trial judge then gave "acting in concert" instructions. After Petitioner's trial, all charges against the co-defendant were dismissed.

Petitioner's sixth claim for relief complains that her sentence is invalid because of three prior misdemeanor convictions that were counted in her prior record level calculation. She maintains that they should not have been. Ground seven is one for ineffective assistance of counsel. Petitioner states that her trial attorney failed her by stipulating to the incorrect record level as described in the sixth claim, while her appellate counsel improperly failed to raise any of her seven other claims for relief on appeal. Finally, Petitioner's eighth claim for relief challenges the sufficiency of the evidence supporting Petitioner's

felonious breaking and entering conviction in 04CRS92376. She claims that the State failed to prove that she broke into Sykes' car or that she did so with intent to commit larceny.

## Discussion

### Procedural Bar

Respondent's first argument is that all of Petitioner's claims, with the exception of her ineffective assistance of counsel claim, are procedurally barred. As Respondent correctly notes, Petitioner did not raise her claims on direct appeal. They were instead raised for the first time in her motion for appropriate relief. In denying that motion the state court held her current claims to be procedurally defaulted because Petitioner could have raised them on appeal, but did not. (Docket No. 5, Ex. 10.)

Absent cause and prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). A procedural rule under which the state court has declined to consider the merits of a petitioner's claims is adequate if it is regularly or consistently applied by the state court, Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend . . . on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

Although the motion for appropriate relief court did not cite a statute in support its ruling, it is clear that Petitioner's claims were held to be barred under N.C. Gen. Stat. § 15A-1419(a). The Fourth Circuit has considered whether a petitioner whose claims have been denied under N.C. Gen. Stat. § 15A-1419(a) is thereby barred from bringing those claims in a federal habeas petition. Boyd v. French, 147 F.3d 319 (4th Cir. 1998). In finding that such a petitioner is barred, the circuit court stated:

> This court has consistently held, however, that § 15A-1419 is an adequate and independent state-law ground for decision foreclosing federal habeas review. See Williams v. French, 146 F.3d 203, 208-09 (4th Cir. 1998); Ashe v. Styles, 39 F.3d 80, 87-88 (4th Cir. 1994) (explaining that a federal habeas petition should have been denied on the basis of procedural default because the state court denied relief pursuant to § 15A-1419(a) which is "an adequate and independent state law ground of decision"); see also O'Dell v. Netherland, 95 F.3d 1214, 1241 (4th Cir. 1996) (en banc) (holding that unambiguous procedural rules derived from state statutes or court rules are necessarily "firmly established" (internal quotation marks omitted)), aff'd, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) . . . .

Boyd, 147 F.3d at 332. Unless Petitioner alleges either cause and prejudice for her procedural default, or attempts to establish that this Court's refusal to address her claims on the grounds of procedural default would result in a miscarriage of justice, the question of whether Petitioner's present claims are barred can be resolved by a determination of whether Petitioner's present claims are the same as those of Petitioner's motion for appropriate

-7-

relief.  If they are, then Petitioner must be denied federal habeas relief.

Here, if the motion for appropriate relief is generously construed, Petitioner raised her claims in that motion.  This means they are procedurally defaulted.  To the extent she did not, they are defaulted in any event because they are unexhausted and Petitioner would be procedurally barred if she returned to state court to pursue exhaustion of her state court remedies.  Therefore, they are procedurally barred in this Court whether or not Petitioner raised them in her motion for appropriate relief. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)(citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991), for proposition that unexhausted claims are barred from federal review if, upon return to the state courts, those courts would find that the claims are procedurally barred).

Petitioner appears to concede procedural default in her response.  (Docket No. 10 at 2.)  However, she seeks to excuse that default based on a miscarriage of justice, i.e., her actual innocence.  It is true that a petitioner can have a procedurally barred claim reviewed through a showing that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; see also McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000).  This exception applies only "where a constitutional violation has 'probably resulted' in the conviction

of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392-94 (2004) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). Moreover, the "actual innocence" exception has been limited by the Fourth Circuit Court of Appeals to apply only in capital cases or cases where the alleged error results in the application of recidivist enhancements. United States v. Mikalajunas, 186 F.3d 490, 494-95 (4th Cir. 1999).[2] Even where the exception applies, in order to demonstrate actual innocence a petitioner must show "'by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found'" her guilty. Dretke, 541 U.S. at 393 (quoting Sawyer v. Whitley, 505 U.S. 333, 336 (1992)).

It is true that Petitioner has steadfastly maintained her innocence and that she testified that she did not commit the crimes of which she was convicted. However, as set out by the North Carolina Court of Appeals on direct review, there was also substantial evidence indicating that Petitioner did commit the crimes. She has presented no further evidence, as opposed to her own self-serving statements, that she is actually innocent. Therefore, she cannot meet the very high burden of demonstrating actual innocence. All of her claims for relief, with the exception

---

[2]There is some doubt about the extension of the actual innocence exception beyond capital cases. Dretke v. Haley, 541 U.S. 386, 392-94 (2004).

of her claim of ineffective assistance of counsel should be denied for being procedurally barred.[3]

## Ineffective Assistance of Counsel

Petitioner's lone remaining claim is for ineffective assistance of counsel. She makes allegations as to both appellate and trial counsel. She contends that trial counsel failed to object to the miscalculation of her prior criminal record at sentencing and that appellate counsel failed to raise any of her current grounds for relief on appeal.

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that her attorney's performance fell below a reasonable standard for defense attorneys and, second, that she was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, Petitioner must show that

---

[3] As will be seen, the fact that Petitioner's ineffective assistance claim will be decided on the merits also means that the merits of all of her claims will be discussed and will be revealed to fail on their merits. They can also be denied for this additional reason.

-10-

there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745 (1983); see also Smith v. Murray, 477 U.S. 527 (1986); Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989)(declaring that counsel pursued sound trial strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy. Jones, 463 U.S. at 751-52. Prejudice can be shown by demonstrating that "'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" Bell v. Jarvis, 236 F.3d 149, 180 (4th Cir. 2000)(quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

Petitioner's first ineffective assistance claim is that her attorney on appeal did not challenge the introduction of her statement to police as being coerced and illegally obtained. Petitioner did litigate the legality of her confession in the trial court. Her pertinent testimony was that she was arrested at her boyfriend's house, told very little about why, and taken to the police station. She was placed in an interview room alone for twenty to thirty minutes, at which time two officers entered and

began talking with her. The officers then confronted her with a number of pieces of evidence and asked her about specific stores and dates where checks were written. They also read through Petitioner's criminal record and became mad because she kept denying that she committed the crimes. Petitioner became worried about making bond in time to attend classes that she was taking and before her children got out of school. She testified that when she asked about bail, one of the officers, Detective Williams, told her that he could speak to the magistrate about bond if she helped them out. Petitioner claimed that she then wrote out a statement confessing to the charges as the officers coached her on the details. Afterward, she signed a waiver of rights statement. She was then given a low bond and released. (Trial Tr., Vol. I at 50-62.)

Detective Williams also testified at the suppression hearing. He testified that Petitioner was arrested at her boyfriend's house and transported to the interview room at the police station. He stated that he read Petitioner her rights immediately upon taking her to the interview room. She waived her rights and spoke freely with officers. Williams and another detective then took Petitioner's written statement confessing to many of the crimes with which she was charged. Although the statement had the time "10:00" written on it, and the waiver of rights form had "10:02" written on it, Williams testified that the waiver of rights

-12-

statement was read and signed before the statement was made. He also denied coaching Petitioner regarding the details of her statement or promising to help her with her bond. He did not remember showing Petitioner the evidence in the case. Williams did state that he informed the magistrate that Petitioner had been cooperative. (Id. at 18-31, 37-41, 48-49.)

Following Petitioner's and Williams' testimony, the trial judge denied the motion to suppress. He made supporting factual findings that Petitioner was taken to an interview room and read her rights, that she understood and waived her rights, that she then implicated herself through verbal and written statements, and that the statements were made without any threats or promises being made. The judge concluded that Petitioner's confession was voluntarily and knowingly made and that it was not induced by threats or promises. (Id. at 80-83.)

To successfully challenge the trial judge's findings and ruling on appeal, Petitioner's appellate counsel would have needed to show that the trial judge's findings of fact were not supported by competent evidence or that the findings of fact did not support the trial judge's conclusions of law. State v. McKinney, 153 N.C. App. 369, 373, 570 S.E.2d 238, 242 (2002). Certainly, although contrary evidence was presented, there was competent evidence to support the trial judge's factual findings that Petitioner was read and waived her rights prior to confessing and that she did not

confess due to any threat or promise. Williams' testimony fully supported those findings. Those findings also supported the trial judge's legal conclusion that Petitioner's confession was knowingly and voluntarily given. As the North Carolina Court of Appeals has noted, a confession is not voluntary under state or federal law if "'[one's] will has been overborne and his capacity for self-determination critically impaired.'" Id. at 373, 570 S.E.2d at 242 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). Certainly, if Williams' testimony was accepted, Petitioner's confession was voluntary under this standard.

Petitioner is really claiming that her appellate counsel should have relitigated the entire issue of her confession on her appeal. However, this is not the purpose of an appeal. Instead, counsel faced the standards just set out and could not have hoped to meet them given the record in the case. Therefore, counsel did not err in deciding not to pursue this meritless issue on appeal and Petitioner was not prejudiced by that decision. This particular claim fails.

Petitioner's next contention is that appellate counsel should have challenged her conviction for obtaining property by false pretenses in case 04CRS91876. That charge involved the incident at Food Lion where she left behind her wallet and the groceries she had attempted to buy with a stolen check. She argues that the

-14-

Case 1:09-cv-00104-TDS-DPD   Document 11   Filed 06/15/09   Page 14 of 20

conviction is invalid because she did not actually obtain the groceries.

This claim quickly fails. As Respondent points out, Petitioner was convicted under N.C. Gen. Stat. § 14-100. Despite the fact that this statute is entitled "obtaining property under false pretenses," it plainly states that it is illegal to use a false pretense to "obtain or attempt to obtain from any person within this State any money, goods, property, services, chose in action, or other thing of value with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value." N.C. Gen. Stat. § 14-100(a). Therefore, it covers both obtaining property and attempting to obtain property through false pretenses. Also, Petitioner's indictment includes an attempt at obtaining property in its allegations. (Docket No. 5, Ex. 1 at 22.)

The fact that attempts are included by the relevant statute and that an attempt was alleged in Petitioner's indictment means that her appellate attorney would have had no basis for raising a claim that the challenged conviction should be dismissed because no property was actually obtained. Again, he neither erred in failing to raise the point, nor prejudiced Petitioner in any way.[4]

---

[4] In her response, Petitioner alters her argument to essentially claim that the evidence is not sufficient even as to an attempt because the testimony of the witness who testified as to the Food Lion incident should not be believed. The credibility of the witness and his ability to identify Petitioner were issues for the jury, not courts of appeals or this Court. She also argues that he was not
(continued...)

-15-

Petitioner's third allegation is that her attorney failed to argue that her convictions in case numbers 04CRS92376, -92382, -92386, -92388, -92392, and -92397 were invalid due to a lack of evidence. This claim is plainly meritless given that there was testimony that Petitioner confessed to committing these crimes. Also, the charge that she broke into and entered Sykes' vehicle was supported by Adrienne Williams' testimony, while her confession to writing fraudulent checks to various stores was supported by carbon copies located in Sykes' checkbook. (Trial Tr., Vol. III at 584-89.) Although Plaintiff certainly contested all of that evidence, it was still in the record so that it supported her eventual convictions. Her attorney could not have successfully challenged the sufficiency of the evidence on these charges. This claim fails just as the prior two claims.

Petitioner's fourth argument is that her appellate attorney improperly declined to challenge the legality of her arrest. She states that the arrest was improper because police entered her friend's home without a search warrant. This claim is frivolous. Petitioner herself alleges that her friend allowed officers to enter. Therefore, no search warrant was needed. Petitioner attempts to claim in her response that the friend's consent was not

---

[4](...continued)
personally present when she tried to pass the check using Sykes' identification, but only viewed the incident later on videotape. Although this appears true, his testimony was also supported by substantial documentary evidence. (Trial Tr., Vol. III at 422-28.)

voluntary. This claim has many problems, but chief among them is a total lack of evidence. It is entirely conclusory and fails as such. It is also contrary to the plain evidence in the case. The officers knocked on the door, which was answered by the friend. That friend personally knew one of the officers. When the officers told him they were there with an arrest warrant for Petitioner, the friend let them inside. (Trial Tr., Vol. III at 569-72.) Appellate counsel could not have raised any viable claim on those facts.

Petitioner's fifth contention is that the jury was charged incorrectly because the judge gave an "acting in concert" instruction. She contends that this was improper because it implied that another person might have been involved. Although Adrienne Williams was also indicted in the case, charges against her were dismissed following her testimony in Petitioner's trial. Petitioner feels the instruction was improper given that Williams was never held accountable for any concerted actions.

It is not entirely clear as to which portions of the jury instructions Petitioner is referring. However, it appears to be several instances where the trial judge instructed the jury that she could be found guilty if she acted either alone or in conjunction with other persons. (See, e.g., Trial Tr., Vol. V. at 1027, 1029). Whatever eventually became of Williams' charges, Williams was charged as a codefendant at the time the instruction

-17-

was given. Again, the instruction was proper at that time. No error could have occurred based on unknowable future events. Therefore, the appellate attorney had no grounds for challenging the instruction based on the later dismissal of the charges. There was no ineffective assistance of appellate counsel as to this claim.[5]

Petitioner's sixth ground for relief faults both her trial and appellate attorney for failing to object to the use of three of the four misdemeanors counted as part of her prior criminal history. Respondent responds that Petitioner was calculated to have a prior record level of II based on her four prior misdemeanors. She was assigned one criminal history point for each misdemeanor, for a total of four points. Even if three points were removed, she would still have one point and would be in the same prior record level. This is correct under North Carolina law. N.C. Gen. Stat. § 15A-1340.17 (prior record level II covers one through four points). Therefore, Respondent maintains that any erroneous use of the convictions was harmless.

Petitioner responds that, although her record level would not have been affected, she was not sentenced at the bottom of the applicable range. She believes that the proper calculation of her score "could have very well" resulted in a decision by the

---

[5]In her reply, Petitioner alleges that Adrienne Williams' testimony that she did not have a deal with the state in exchange for her testimony was false. However, she has produced no actual evidence that the testimony was false at the time it was given.

sentencing judge to sentence her lower in the applicable range. (Docket No. 27.) Petitioner was a habitual felon. Any argument that an additional three misdemeanors on her record affected her sentence strains credulity. It is entirely speculative in any event. Petitioner's attorneys neither erred, nor prejudiced her, in failing to raise this point.

Petitioner's final contention is yet another sufficiency of the evidence argument. She contends that her conviction in case 04CRS92376 is invalid because there was no proof that she broke into Sykes' car or that she did so intending to commit larceny. Of course, this claim ignores the fact that Adrienne Williams testified that Petitioner expressly stated that she should break into Sykes' car and steal her purse and that she did so shortly thereafter. There was also circumstantial evidence in the form of Sykes' testimony, which supported this rendition of events. Petitioner responds by seeking to discredit Williams' testimony due to the fact that she was an interested witness. Again, this was a matter for the jury to decide. Petitioner's appellate attorney could not raise a sufficiency of the evidence argument on appeal by simply ignoring the fact that Williams' testimony was in the record. As with the other claims, the attorney did not provide deficient representation or prejudice Petitioner in failing to

raise this claim. All of Petitioner's many arguments fail.[6] Respondent's motion for summary judgment should be granted.

**IT IS THEREFORE ORDERED** that Petitioner's motion to strike (docket no. 9) is denied.

**IT IS RECOMMENDED** that Respondent's motion for summary judgment (docket no. 4) be granted, that the habeas petition (docket no. 1) be denied, and that Judgment be entered dismissing this action.

                          /s/ Donald P. Dietrich
                              **Donald P. Dietrich**
                      **United States Magistrate Judge**

June 15, 2009

---

[6] In her response, Petitioner attempts to raise a new claim that her trial attorney was ineffective because he failed to call certain witnesses who would have supported key portions of her testimony. It is not proper to raise such a claim in a response brief. More importantly, the claim is conclusory because Plaintiff has failed to introduce any evidence, as opposed to her own self-serving and conclusory statements, concerning whether those witnesses would have been available and what the nature of their testimony would have been. This claim should also be denied.